# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

BRANDON ADKINS, et al.,

        Plaintiffs,

v.                                          CIVIL ACTION NO. 3:19-cv-00275

WELLS FARGO BANK, N.A., et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Compel Arbitration and to Dismiss the Complaint by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). (ECF No. 7.) For the reasons stated herein, the Motion, (ECF No. 7), is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

According to the Complaint, Plaintiffs fell into arrears over an alleged debt owed to Wells Fargo. (ECF No. 1-1 at 7 ¶ 5.) Wells Fargo attempted to collect on the debt, allegedly making telephone calls and sending letters to Plaintiffs. (*Id.*) Plaintiffs retained legal counsel before February 3, 2015. (*Id.* at 8 ¶ 7.) During one of the phone calls, Plaintiffs allegedly alerted Wells Fargo to their legal representation and provided Wells Fargo the contact information for their attorney. (*Id.* at ¶ 8.) After this interaction, Wells Fargo purportedly continued to call Plaintiffs "on a regular basis" in attempt to collect on the debt. (*Id.* at ¶ 9.)

Based on these facts, Plaintiffs filed a complaint in the Circuit Court of Wayne County against Wells Fargo on March 9, 2019, asserting violations of the West Virginia Consumer Credit

and Protection Act ("WVCCPA"), W. Va. Code § 46A–1–101, *et seq.*, intentional infliction of emotional distress, and invasion of privacy. For these claims, Plaintiffs seek actual and statutory damages, punitive damages, and attorney fees and costs. (*Id.* at 11–12.) Wells Fargo timely removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) On June 3, 2019, Wells Fargo filed the present Motion to Compel Arbitration regarding Ms. Adkins and a simultaneous Motion to Dismiss as to both Plaintiffs. (ECF No. 7.) Plaintiffs filed a response on July 15, 2019, (ECF No. 17), and Wells Fargo replied on August 5, 2019, (ECF No. 20). As such, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARDS

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") was in enacted in 1925 to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place [them on] the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The Act provides that arbitration clauses in contracts concerning interstate commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Id.* (citing *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989)).

Under section 4 of the FAA, "a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.' The court 'shall' order

arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" *Rent-A-Center West, Inc., v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4). A party seeking to compel arbitration pursuant to this section must establish the following:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)) (internal quotation marks omitted).

B.   Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). This pleading rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain enough facts, accepted as true, "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In evaluating the

sufficiency of a complaint, a court separates the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Iqbal*, 556 at 678. A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III. DISCUSSION

*A. Arbitration Agreement*

First, Wells Fargo moves to compel Ms. Adkins to submit her claims for violation of the WVCCPA, intentional infliction of emotional distress, and invasion of privacy to arbitration because they are subject to an arbitration agreement. (ECF No. 8 at 5–7.) As stated above, there are four factors a party must demonstrate for the Court to compel arbitration under the FAA. *See supra* Part II.A. Here, Plaintiffs contest the second factor, denying the existence of an arbitration agreement between the parties. (ECF No. 17 at 3.) They claim that after Wells Fargo filed its notice of removal, Plaintiffs' counsel asked Wells Fargo to produce the "online application signed by [Plaintiffs]" and proof that the application allegedly submitted "is linked with any documents signed by [Plaintiffs]." (ECF No. 17-1.) To date, Wells Fargo has failed to provide any documentation relating to Plaintiffs' account.

The Fourth Circuit has stated that "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501

(quoting *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997)) (internal quotation marks omitted). Unless the parties have formed an agreement, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986); 9 U.S.C. § 3 (requiring "an agreement in writing" for arbitration to proceed). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins*, 303 F.3d at 501 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Further, the West Virginia Supreme Court of Appeals has held that "the proponent of a lost or missing instrument must prove its existence and contents with clear and convincing evidence." *Estate of Bossio v. Bossio*, 785 S.E.2d 836, 841 (W. Va. 2016).

Here, Wells Fargo's argument relies solely on the declaration of its own employee, Jeffrey Hoffman, who states that he has personally examined the business records that purportedly bind Ms. Adkins to arbitration. (ECF No. 7-2 (Hoffman Decl.).) Throughout his declaration, Mr. Hoffman references several documents, including the Credit Card Agreement and Ms. Adkin's online application for a Wells Fargo credit account. He states that Ms. Adkins received a credit account by submitting an online application and that "Wells Fargo's online application system cannot approve a credit card application, let alone issue a credit card, unless the applicant has signed the Credit Card Agreement" and indicates "consent to be bound by the terms of the Arbitration Agreement." (*Id.* at 2 ¶ 4, 3 ¶ 11.) He goes on to state that "Ms. Adkins signed the Credit Card Agreement," which allegedly includes the arbitration provision that encompasses her claims asserted in this action. (*Id.* at 2 ¶¶ 6–7, 4 ¶ 12.) Critically, however, Wells Fargo has failed to produce the arbitration agreement allegedly signed by Ms. Adkins let alone any direct evidence relating to Plaintiffs' account or application. Instead, its motion is based solely on an

5

alleged contract and Mr. Hoffman's assurances, which, without more, appears to consist of mere speculation as to what should have occurred based on Wells Fargo's normal course of business.

In its reply, Wells Fargo provides a supplemental declaration of Mr. Hoffman and a redacted application summary with information, including Ms. Adkins' full name, social security number, date of birth, contact information, and the internet protocol ("IP") address from which she made her online application. (ECF No. 20-1.) Citing a decision from the Central District of California, Wells Fargo argues that the IP address is additional proof that Ms. Adkins electronically signed the Credit Card Agreement, including the arbitration agreement. (ECF No. 20 at 4 (citing *Castillo v. Cava Mezze Grill, LLC*, 2018 WL 7501263 (C.D. Cal. Dec. 21, 2018)).) In *Castillo*, an employee, in opposition to her employer's motion to compel arbitration, contended that she was not presented with and did not agree to the disputed arbitration agreement because it did not contain her signature. In response, her employer's human resources manager submitted a declaration explaining how the online employment forms and onboarding process is completed. The declaration also included a screenshot of the plaintiff's account, which showed the documents she completed, her electronic signature, and the date and times she electronically signed each document. Some of the forms also showed the plaintiff's IP address and email. The court found that, regardless of whether the IP address and email were included, the employer established by a preponderance of the evidence that the employee reviewed and signed the arbitration agreement because her "electronic signature block [was] consistent across all employment forms . . . ." 2018 WL 7501263, at *3.

Unlike in *Castillo*, the evidence offered here does not contain a depiction of Ms. Adkins' electronic signature but instead is merely an application summary of her personal information and

the date and time she entered and submitted the application. Wells Fargo does not do so much as explain how the information was compiled and who prepared the summary. Without a replication of Ms. Adkins' signature, the IP address has no significance and is insufficient to prove the existence of the alleged arbitration agreement by clear and convincing evidence. *See Pellerin v. Life Ins. Co. of N. Am.*, 187 F.3d 630, 1999 WL 507209, at *3 (4th Cir. July 19, 1999) (affirming the district court's denial of a motion to compel arbitration where there was "no evidence of any agreement to arbitrate between the parties."); *Emp. Res. Grp., LLC v. Adkins*, No. 16–0150, 2016 WL 6819786 (W. Va. Nov. 18, 2016) (denying motion to compel arbitration where affidavit of representative was submitted but no direct evidence was offered to show that the party opposing arbitration was presented with the arbitration agreement or even had knowledge of the same). Accordingly, Wells Fargo's motion to compel Ms. Adkins' claims to arbitration is **DENIED**.

  B.  *Standing under the WVCCPA*

With respect to Mr. Adkins, Wells Fargo argues that he lacks standing to bring suit under the WVCCPA because he does not meet the definition of a "consumer" under the Act. (ECF No. 8 at 7–8.) In particular, Wells Fargo contends that the allegations in the Complaint are insufficient to establish that Mr. Adkins has standing separate from that of his wife, who is the account holder, to proceed with a WVCCPA claim. In response, Plaintiffs argue that they share a marital interest in the claim because they "used their financial accounts in unity." (ECF No. 17 at 7.) West Virginia Code § 46A–1–102(12) defines a "consumer" as "a natural person who incurs debt pursuant to . . . a consumer loan, . . . ." W. Va. Code § 46A–1–102(12). The Court agrees with Wells Fargo that Mr. Adkins' asserted marital interest in their finances "does not mean [he] is a consumer for purposes of the [account]." *In re Spurlock*, No. 3:10–1252, 2011 WL 2469830, at

7

*6 (S.D. W. Va. June 17, 2011) (dismissing spouse's claim under the WVCCPA, despite her "marital interest in the house," where she did not sign the loan at issue and was not a party to the agreement).

Further, Plaintiffs bear the burden of establishing standing with respect to their claims. *See Jones v. Sears Roebuck & Co.*, No. 5:06-cv-00345, 2007 WL 964401, at *2 (S.D. W. Va. Mar. 28, 2007). The elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff[s'] case" that must be supported by sufficient evidence, as required at the successive stages of the litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* Here, while the Complaint alleges that both "Plaintiffs fell into arrears upon an alleged indebtedness owed by Plaintiffs to the Defendant," (ECF No. 1-1 at 7 ¶ 5), there are no allegations that Mr. Adkins was a cardholder under the account or a party to the alleged agreement. Neither have Plaintiffs offered any evidence establishing that Mr. Adkins has any interest or obligation under the account. Accordingly, Count I of the Complaint is **DISMISSED** with respect to Mr. Adkins.

C.   *WVCCPA*

Next, Wells Fargo argues that Plaintiffs' WVCCPA claim fails because the Complaint includes no allegation that Wells Fargo made any call with the requisite intent to annoy, abuse, oppress, or threaten Plaintiffs. (ECF No. 8 at 8–9.) Under West Virginia law, a debt collector may be liable under the WVCCPA for calling a person numerous times per week "with intent to annoy, abuse, oppress or threaten any person at the called number." W. Va. Code § 46A–2–125(d). Plaintiffs plainly allege in Paragraph 12 of their Complaint that Wells Fargo "engag[ed]

8

in unreasonable, oppressive, or abusive conduct towards the Plaintiffs by placing a large amount of telephone calls to [them] in an attempt to collect a debt . . . ." (ECF No. 1-1 at 9 ¶ 12.) However, Wells Fargo contends that "the number of telephone calls . . . alone is not sufficient to establish a defendant's intent to annoy" under the WVCCPA. (ECF No. 8 at 8.) In so arguing, Defendant relies on *Valentine & Kebaratas, Inc. v. Lenahan*, 801 S.E.2d 431, 436 (W. Va. 2017), where the West Virginia Supreme Court of Appeals held "that the volume of unanswered calls . . . does not establish intent in violation of [the WVCCPA]." In that case, the issue of intent was before the court on summary judgment. *Id.* at 435 (noting that to establish such a claim on summary judgment there must be evidence of numerous calls "and other evidence which suggested abuse." (citing *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 502 (S.D. W. Va. 2014)). Here, however, Plaintiffs need only "state a claim to relief that is plausible on its face" to survive the Rule 12(b)(6) standard. *Iqbal*, 556 U.S. at 678.

In *O'Dell v. USAA Fed. Sav. Bank*, No. 3:17-1427, 2018 WL 1701973, (S.D. W. Va. Apr. 5, 2018), this Court held that intent to annoy, abuse, oppress, or threaten was established with evidence "regarding the volume, the nature, the quality, and the characteristic of Defendant's repeated and continuous calls." 2018 WL 1701973, at *10. Here, Plaintiffs support their claim with factual allegations that they received "telephone calls from the Defendant on a regular basis" and that Wells Fargo's collection activities, including telephone calls and written communications, were "high volume." (ECF No. 1-1 at 8 ¶¶ 6, 7.) Further, they allege that Wells Fargo continued to place telephone calls to Plaintiffs "on a regular basis" even after they advised Wells Fargo not to contact them anymore unless through their retained counsel, whose name and contact information were provided to Wells Fargo. (*Id.* ¶¶ 8, 9.) Plaintiffs allege that Wells Fargo's

9

conduct and consistent collection efforts are "constantly fresh on their minds" and have caused them "to endure stress and anxiety on a daily basis" in addition to "annoyance, worry, and aggravation." (*Id.* ¶ 10.) Like in *O'Dell*, the Court finds that these assertions, if proven, would establish a claim under the WVCCPA. Thus, Plaintiffs' Complaint sufficiently states a plausible claim for violation of the WVCCPA, and, accordingly, Wells Fargo's motion with respect to Ms. Adkins' WVCCPA claim in Count I is **DENIED**.

    D.    *Intentional Infliction of Emotional Distress*

Wells Fargo also contends that Plaintiffs fail to plead the requisite elements to sustain an intentional infliction of emotional distress claim. (ECF No. 8 at 9–10.) In West Virginia, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ." Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982). The West Virginia Supreme Court of Appeals has set forth the following elements necessary to establish intentional infliction of emotional distress:

> (1) That defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) That the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) That the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) That the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Philyaw v. E. Associated Coal Corp.*, 633 S.E.2d 8, 13 (W. Va. 2006) (quoting syl. pt. 3, *Travis v. Alcon Labs.*, 504 S.E.2d 419, 425 (W. Va. 1998)). This claim requires conduct that is "more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Id.* at 425 (citation omitted). Alleged "conduct that is merely annoying, harmful of one's rights

10

or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." *Courtney v. Courtney*, 413 S.E.2d 418, 423–24 (W. Va. 1991) (internal citations removed).

Wells Fargo argues that Plaintiffs' allegations are conclusory and simply suggest that they "received occasional calls over the subject timespan." (ECF No. 20 at 6.) In *Baldwin v. Wells Fargo Fin. Nat'l Bank*, No. 3:16-4841, 2017 WL 63026 (S.D. W. Va. Jan. 5, 2017), this Court considered the same issue as to whether intentional infliction of emotional distress was sufficiently pled in a complaint nearly identical to Plaintiffs here. There, the complaint asserted "that a high volume of calls were placed to Plaintiffs—even after Defendant was aware of attorney representation—and that Plaintiffs were threatened by such conduct." *Id.* at *3 (internal quotation marks omitted). Based on these allegation, this Court found that "[a]lthough an IIED's outrageous standard requires conduct 'so severe that no reasonable person could be expected to endure it', Plaintiffs' complaint sufficiently pleads a plausible claim involving a high number of threatening phone calls." *Id.* (citing *Travis*, 504 S.E.2d at 425). As stated previously, Plaintiffs allege that Wells Fargo acted egregiously by placing "a high volume of telephone calls to Plaintiff's home in violation of the WVCCPA", by continuing "to contact Plaintiffs while knowing they were represented by an attorney," and by "adopt[ing] policies and procedures without regard to West Virginia law" and "which have the effect of inflicting emotional distress upon consumers to coerce them to pay money . . . ." (ECF No. 1-1 at 10 ¶ 15.) Plaintiffs also connect Wells Fargo's conduct to the severe emotional distress Plaintiffs' allegedly suffered, specifying that Plaintiffs were harassed and threatened by the calls. (*Id.* ¶ 17.) Accepting these factual allegations as true, the Court finds that the Complaint sufficiently pleads a claim for IIED. Therefore, the motion to dismiss Count II is **DENIED**.

### E. Invasion of Privacy

Finally, Wells Fargo argues that Plaintiffs' Complaint inadequately states a claim for invasion of privacy. (ECF No. 8 at 10–11.) An invasion of privacy claim may be asserted under four different theories, including for "an unreasonable intrusion upon the seclusion of another." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 85 (W. Va. 1984). An "[u]nreasonable intrusion upon another's seclusion occurs when '[o]ne . . . intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person.'" *Harbolt v. Steel of West Virginia, Inc.*, 640 F. Supp. 2d 803, 817 (S.D. W. Va. 2009) (quoting Rest. (Second) of Torts § 652B (1977)). Again, the pleadings specify that Wells Fargo allegedly repeatedly and continuously called and wrote to Plaintiffs after learning of attorney representation. Plaintiffs allegedly suffered emotional distress as a result. (ECF No. 1-1 at 11 ¶¶ 20–22.) The Court finds that these allegations survive the plausibility standard under a motion to dismiss. *See Elkins v. Diversified Collection Servs., Inc.*, No. 5:13-cv-00927, 2013 WL 3754830, at *7 (S.D. W. Va. July 15, 2013) (finding that "[d]espite [plaintiff's] failure of averring the number and times of the telephone calls or communications in his pleading, he has alleged enough details in the pleading" to state a plausible invasion of privacy claim); *Baldwin*, 2017 WL 63026, at *4 (same). Therefore, Wells Fargo's motion to dismiss Count III is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, Wells Fargo's motion to compel arbitration and dismiss the complaint is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 7.) The motion is **DENIED** insofar as it seeks to compel arbitration. Further, Wells Fargo's motion to dismiss

Counts II and III is **DENIED**. The motion insofar as it seeks to dismiss Count I with respect to Mr. Adkins is **GRANTED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 16, 2020

_____
THOMAS E. JOHNSTON, CHIEF JUDGE